ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XII

| YARA LINNETTE SANTIAGO TORRUELLA<br><br>Peticionaria<br><br>v.<br><br>LUIS OCASIO VEGA<br><br>Recurrido | TA2026CE00007 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Municipal de Ponce<br><br>Caso Núm.: PO2025MU00803<br><br>Sobre: Ley Contra el Acecho en Puerto Rico-Expedición de Órdenes de Protección |

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Adames Soto, el Juez Campos Pérez y la Jueza Trigo Ferraiuoli

Campos Pérez, Juez Ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 23 de febrero de 2026.

**I.**

El 19 de noviembre de 2025, la Sra. Yara L. Santiago Torruella, maestra de educación física con más de 20 años de experiencia, gestionó una *Petición de orden de protección* por acecho, al amparo de la Ley Núm. 284-1999, *infra*, en contra del Sr. Luis Ocasio Vega, director del plantel escolar en que labora.[1] A base de las alegaciones expuestas, el Tribunal de Primera Instancia, Sala Municipal de Ponce (TPI), expidió una *Orden de protección ex parte* en la misma fecha y determinó los siguientes hechos:[2]

Peticionaria es maestra de educación física en Escuela Intermedia Jardines de Ponce. Peticionado es su supervisor, director de la Escuela. Peticionado desde que llegó a la Escuela en septiembre de 2024 muestra conducta hostil y de intimidación hacia peticionaria. Le grita, la bota de las reuniones frente a sus demás compañeros, como lo ocurrido el 8 de abril de 2025. La trata con rabia y de manera despectiva. El 22 de octubre de 2025 subió al salón de clases sin autorización de [la] peticionaria a reclamarle por un correo electrónico que ella había enviado al Director Regional. Le gritó frente a sus estudiantes, se pone agresivo con palabras soeces y a "manotearla". Peticionaria se siente intimidada, ansiosa y aislada por la conducta del

---

[1] Entrada 1 del Sistema Unificado de Manejo y Administración de Casos (SUMAC). La señora Santiago Torruella estuvo representada por el Lcdo. Julián Claudio Gotay, quien fungió como parte peticionaria.
[2] Véanse, entradas 2 y 6 SUMAC.

peticionado. Actualmente la peticionaria está por el Fondo, recibiendo ayuda psicológica por daños emocionales ante la situación y hechos en su lugar de empleo. Peticionaria hizo querella en el Departamento de Educación.

El 5 de diciembre de 2025 se celebró la correspondiente audiencia. A ésta acudieron la peticionaria y el recurrido. La señora Santiago Torruella narró cinco incidentes acontecidos en el transcurso de un año, en la Escuela Jardines de Ponce y en la Oficina de la Región Educativa de Ponce (ORE), los cuales resumimos a continuación, conforme surgen de la *Petición* y la regrabación del procedimiento.[3]

### Sra. Yara L. Santiago Torruella

### 10 de octubre de 2024[4]

Acude a la oficina del señor Ocasio Vega acompañada de Alexis Soto. Allí se encuentra Javier, empleado de mantenimiento. El señor Ocasio Vega da lectura a un punto en particular de un correo electrónico: "Yo soy el que mando", en referencia a él. Éste le cuestionó gritando a la señora Santiago Torruella si lo había escrito. Ella le explicó que lo escribió, pero la expresión la había dicho Javier. Afirmó que el señor Soto fue testigo de ello. El señor Ocasio Vega negó la veracidad del hecho en tono molesto y le exigió una disculpa por escrito. El suceso la hizo sentir "ofendida, avergonzada y humillada". Luego, la peticionaria habló con su esposo y se reportó a la Corporación del Fondo del Seguro de Estado (CFSE) porque no se sentía bien emocionalmente, debido a la manera en que el recurrido le habla y cómo la trata. En torno a este suceso, en la *Petición* también expresó que le "provocó un sentimiento de impotencia y comen[zó] a llorar sin parar".

---

[3] El 7 de enero de 2026, la peticionaria solicitó autorización para presentar la transcripción de la prueba oral en un término de 45 días. El 14 de enero de 2026, notificada al día siguiente, emitimos una *Resolución* en la que, sin autorizar la transcripción referida ni dictar instrucciones a las partes, ordenamos al foro impugnado a remitir "el enlace con la regrabación de los procedimientos celebrados el 5 de diciembre de 2025 en el caso PO2025MU00803". El tribunal compelido cumplió lo ordenado el 15 de enero de 2026. Contrario a nuestra determinación, el 22 de enero de 2026, la señora Santiago Torruella peticionó un término para la estipulación de la transcripción de la prueba oral por parte del recurrido, por lo que no tenemos nada que proveer al respecto. Véanse, entradas 2-3 y 6 SUMAC-TA.

[4] Regrabación de la vista de 5 de diciembre de 2025 (Vista final), 0:08:00.

**8 de abril de 2025**[5]

La señora Santiago Torruella acudió a una reunión en la oficina del señor Ocasio Vega para discutir el día de juegos de la escuela, que suele ser organizado por los maestros de educación física, es decir, ella y el señor Soto. Mientras la peticionaria hablaba, frente a los presentes, el recurrido la interrumpió y le indicó que no entendía qué hacía allí porque ella no había sido convocada. Le increpó y manoteó: ¿Usted va a ayudar, sí o no?" La peticionaria explicó que se sintió ofendida por la falta de respeto del acto de gritarle frente a otras personas, cosa que el recurrido acostumbra a hacer. Ella se retiró de la reunión y se dirigió a su hogar, ya que era la hora de salida. En la *Petición* mencionó que el recurrido tenía una actitud despectiva, irrespetuosa e intimidante, que genera un mal ambiente.

**10 de abril de 2025**[6]

La peticionaria contó que impartía clases en el área del patio de la cancha. Los niños debían hacer una presentación que ella evaluaría; los niños llevaron sus meriendas. Cuando preguntó por unos alumnos que faltaban por evaluar, otros le dijeron que estaban en la biblioteca. "No sé quién se los llevó". Ella se dirigió allí a hablar con la tallerista y buscar a los alumnos que no habían sido evaluados, mientras que los evaluados podían permanecer en la biblioteca. Regresaron a la cancha. La trabajadora social fue hasta allí y le preguntó, por lo que la peticionaria le explicó lo mismo que a la tallerista. Entonces, "de la nada", el señor Ocasio Vega llegó y cuestionó qué pasaba allí. Ella le indicó al recurrido que él había aprobado esa clase. Éste manoteó y cambió los planes. La peticionaria entendió que el señor Ocasio Vega la iba a agredir, por el coraje y odio que percibió del recurrido. Los niños se afectaron. La niña que evaluaba se descompensó. La menor tiene autismo por lo que debió

---

[5] Vista final, 0:14:15.
[6] Vista final, 0:17:30. Refiérase al anejo 2 presentado por el recurrido en la entrada 4 de nuestro expediente electrónico SUMAC-TA, el cual fue mencionado durante el contrainterrogatorio del señor Ocasio Vega, sin que el TPI lo haya examinado.

ser asistida por la sicóloga escolar. La señora Santiago Torruella indicó que se sintió avergonzada, humillada frente a sus compañeros y estudiantes y con miedo, pues "yo pensé que me iba a dar". En la *Petición* expresó: "Esto ha sido una constante desde el día 1 que se presentó a la escuela, 23 [de] septiembre [de] 2024".

A preguntas de su representación legal, la señora Santiago Torruella acotó que, en abril de 2025, interpuso una *Querella* por acoso laboral contra el señor Ocasio Vega en el Departamento de Educación, la cual se encontraba en etapa cuatro al momento de su testimonio; esto es, un proceso adjudicativo ante un árbitro.[7]

### 1 de mayo de 2025[8]

Como parte del proceso de la *Querella*, se realizó una vista de conciliación, en la ORE de Ponce. La señora Santiago Torruella asistió representada por un abogado de la Asociación, identificado en la *Petición* como el Lcdo. Iván Ayala. La peticionaria atestiguó que, frente al superintendente, el señor Ocasio Vega agitó y tiró un papel que contenía una orden de cese y desista enviada por el referido abogado. Dijo que el recurrido manifestó: "Esto, esto no tiene sentido. Esto no tiene ni pies ni cabeza; que tire pa'lante, que yo lo conozco. Se la voy a contestar". La señora Santiago Torruella se sintió humillada y avergonzada.

### 22 de octubre de 2025[9]

La peticionaria contó que el recurrido interrumpió su clase frente a los estudiantes para reclamarle el envío de un correo electrónico, en el que ella incluyó como destinatario al Sr. Ramón Pagán Mercado, superintendente regional de la ORE de Ponce. Apuntó que la actitud del recurrido era agresiva, por lo que ella se sintió avergonzada y humillada.

---

[7] Vista final, 0:22:00 y 1:51:15. Del expediente se identifica la *Querella* A-PON-2025-0000057.

[8] Vista final, 0:23:15. Véase, anejo 3 incluido por el recurrido en la entrada 4 de SUMAC-TA, el cual no fue examinado por el TPI, pero ambas partes sostuvieron en sus declaraciones que no hubo acuerdo de conciliación entre ellos.

[9] Vista final, 0:26:00. Véase, anejo 4 sometido por el recurrido en la entrada 4 de SUMAC-TA, que el TPI no evaluó, pero fue mencionado someramente durante el contrainterrogatorio de la señora Santiago Torruella.

A raíz de estos y otros eventos, la señora Santiago Torruella se encuentra bajo tratamiento sicológico y recibe asistencia siquiátrica en la Unidad Multidisciplinaria de la CFSE. La *Petición* responde a su necesidad de trabajar en paz.[10]

### Contrainterrogatorio[11]

En el contrainterrogatorio, la peticionaria confirmó que todos los eventos han sido en el escenario laboral, nunca en un lugar público o privado. El recurrido tampoco la ha llamado por teléfono. La peticionaria reconoció también la existencia de mecanismos administrativos en el Departamento de Educación, así como la *Querella* que instó.[12]

### Luis Ocasio Vega[13]

El recurrido testificó sobre su puesto y los deberes de sus funciones. En esencia, "so pena de perjurio", contó su versión de los hechos acerca de los incidentes antes referidos. Aseguró que propende a la paz laboral. Negó haber gritado, manoteado ni utilizado palabras soeces contra la señora Santiago Torruella. Por el contrario, imputó esa conducta a la peticionaria; al igual que disloques de comunicación, incumplimientos e insubordinación. Dijo que había recurrido a mecanismos de disciplina progresiva, aunque rechazó tener animosidad contra la peticionaria.

### Contrainterrogatorio[14]

El recurrido sostuvo sus previas expresiones acerca de la falta de veracidad de las declaraciones de la peticionaria y que todo se originó por la evaluación profesional de 2024.

---

[10] Vista final, 0:30:00.

[11] Vista final, 0:32:45-1:12:10.

[12] La representación legal del señor Ocasio Vega presentó una evidencia documental de la CFSE, fechada el 6 de noviembre de 2024 y relacionada con el incidente de 24 de octubre de 2024. El documento fue examinado por el TPI, pero ninguna de las partes lo unió al expediente ante nos. Además, el señor Ocasio Vega aludió a la carta enviada por éste el 30 de octubre de 2025 a la peticionaria, en la que anunció la Evaluación de la Formativa I de ésta, pautada para el 6 de noviembre de 2025; anejo 1 presentado por el recurrido en la entrada 4 de SUMAC-TA. El TPI no tuvo la misiva ante sí.

[13] Vista final, 1:14:30-1:35:30.

[14] Vista final, 1:35:30-1:48:45.

De otro lado, el TPI cuestionó al recurrido acerca del procedimiento administrativo que se llevaba a cabo en el Departamento de Educación. El recurrido indicó que, luego de la *Querella*, ambos litigantes continuaron trabajando en la misma escuela. No obstante, una vez expedida la *Orden de protección ex parte*, el señor Pagán Mercado ubicó al recurrido en la ORE de Ponce y asignaron una directora interina al plantel escolar.[15]

Cabe señalar que, luego de indagar e informar el contenido de las declaraciones de los testigos a favor de la peticionaria y a favor del recurrido, el TPI declinó sus participaciones por no ser necesarias.[16] Finalmente, las correspondientes representaciones legales esgrimieron sus respectivas argumentaciones finales.[17]

Justipreciada la prueba, el TPI denegó expedir una orden de protección final.[18] Coligió que la jurisdicción primaria correspondía al proceso arbitral en el Departamento de Educación. De igual modo, concluyó que no estaban presentes los elementos constitutivos de la Ley Núm. 284-1999, *infra*, por lo que ordenó el cierre y archivo del caso. A esos efectos, consignó las siguientes expresiones:

> Las partes tienen conflictos laborales desde octubre de 202[4]. Existe querella de Acoso Laboral en el Departamento de Educación sobre las alegaciones incluidas en esta petición. Actualmente la querella se encuentra en etapa de ser evalu[a]da por un árbitro. En *Suárez v. Hatton*, KLAN201601131, Sentencia del Tribunal de Apelaciones del 29 de septiembre de 2016, se expresó que "la Ley de Acecho no tiene como propósito evitar situaciones de estrés o mera rivalidad entre las personas. Persigue evitar situaciones de verdadera peligrosidad donde se percibe que han ocurrido actos tales que de no emitirse una orden de protección pudiera ocurrir una desgracia".

Inconforme, el 7 de enero de 2026, la señora Santiago Torruella presentó el recurso discrecional de *certiorari* del título y señaló el siguiente error:

> *Erró el Tribunal de [Primera] Instancia al denegar la solicitud de orden de protección bajo los fundamentos de que no se*

---

[15] Vista final, 1:50:00.
[16] Vista final, 1:13:00 y 1:49:00.
[17] Vista final, 1:54:15-1:59:52 y 1:59:56-2:05:25.
[18] Entrada 20 SUMAC; Vista final, 2:05:30.

*habían establecido los elementos estatutarios del acecho, de que existía una querella laboral ante el Departamento de Educación relacionada con los incidentes en que la peticionaria basaba su solicitud, a pesar de que se trata de dos procedimientos con propósitos y remedios diferentes, y que la Ley de Acecho no tiene como propósito evitar situaciones de estrés o mera rivalidad entre las personas.*

En cumplimiento de nuestra *Resolución* de 14 de enero de 2026, el señor Ocasio Vega instó su oposición. Con el beneficio de ambas comparecencias y la regrabación de la vista de 5 de diciembre de 2025, procedemos a resolver.

## II.

## A.

La Ley Núm. 284 de 21 de agosto de 1999, *Ley contra el acecho en Puerto Rico,* 33 LPRA sec. 4013 *et seq.,* define en el Artículo 3 (a) el término *acecho* como aquella "conducta mediante la cual se ejerce una vigilancia sobre determinada persona; se envían comunicaciones verbales o escritas no deseadas a una determinada persona, se realizan amenazas escritas, verbales o implícitas a determinada persona, se efectúan actos de vandalismo dirigidos a determinada persona, se hostiga repetidamente mediante palabras, gestos o acciones dirigidas a intimidar, amenazar o perseguir a la víctima o a miembros de su familia".[19] 33 LPRA sec. 4013 (a). En cuanto al *patrón de conducta,* se refiere a "realizar en dos (2) o más ocasiones actos que evidencian el propósito intencional de intimidar a determinada persona o a miembros de su familia".

En ánimo de proteger los valores de paz, seguridad, dignidad y respeto, la Asamblea Legislativa promulgó el estatuto, mediante el cual la persona perjudicada puede solicitar la expedición de una orden de protección. Véase, *Exposición de Motivos* de la Ley Núm. 284-1999. A esos fines, el estatuto establece las pautas para la solicitud y expedición

---

[19] Cabe mencionar que, en marzo de 2021, actualizado en febrero de 2022, el Tribunal Supremo de Puerto Rico divulgó el *Libro de instrucciones al jurado.* En el Capítulo 16, *Ley contra el acecho en Puerto Rico,* a las págs. 423-428, se adicionó una nueva instrucción sobre la conducta tipificada y sus elementos, en su modalidad grave, según establecidos en el Artículo 4 (b) de Ley Núm. 284-1999, 33 LPRA sec. 4014 (b).

de órdenes de protección *ex parte* y finales, así como el contenido de dichos mandamientos y las consecuencias de su incumplimiento. Véanse, Arts. 5-10 de la Ley Núm. 284-1999, 33 LPRA secs. 4015-4020.

**B.**

De otro lado, la Ley Núm. 90 de 7 de agosto de 2020, *Ley para prohibir y prevenir el acoso laboral en Puerto Rico*, 29 LPRA sec. 3111 *et seq.* (Ley Núm. 90-2020), propende a la protección de la inviolabilidad de la dignidad de todo ser humano en el ámbito del empleo, independientemente de su naturaleza, categoría, jerarquía o clasificación. Arts. 2-3 de la Ley Núm. 90-2020, 29 LPRA secs. 3112-3113. El estatuto define *acoso laboral* como "aquella conducta malintencionada, no deseada, repetitiva y abusiva; arbitraria, irrazonable y/o caprichosa; verbal, escrita y/o física; de forma reiterada por parte del patrono, sus agentes, supervisores o empleados, ajena a los legítimos intereses de la empresa del patrono, no deseada por la persona, que atenta contra sus derechos constitucionales protegidos, [...]". Art. 4 (3) de la Ley Núm. 90-2020, 29 LPRA sec. 3114 (3). La determinación de la existencia o no de acoso laboral está sujeta a la totalidad de las circunstancias y los hechos probados en cada caso particular. Entre los elementos a considerar se encuentran: expresiones injuriosas difamatorias o lesivas, comentarios hostiles y humillantes, amenazas de despido o múltiples denuncias disciplinarias injustificadas, la descalificación humillante sobre propuestas u opiniones de trabajo, entre otras. Art. 8 de la Ley Núm. 90-2020, 29 LPRA sec. 3118. El acosador laboral se expone a responder civilmente por una suma igual al doble del importe de los daños causados, cuya causa de acción tiene un término prescriptivo de un año, a partir del momento en que la persona acosada se sintió sometida a dicho acoso. Arts. 11-12 de la Ley Núm. 90-2020, 29 LPRA secs. 3121-3122.

El Artículo 10 de la Ley Núm. 90-2020, 29 LPRA sec. 3120, dispone lo siguiente:

> Toda persona que reclame ser víctima de acoso laboral deberá comunicarlo siguiendo el procedimiento y protocolo adoptado por su patrono, el cual, según ya dispuesto, deberá ser amparado en las guías uniformes establecidas por el Departamento del Trabajo y Recursos Humanos, la Oficina de Administración y Transformación de los Recursos Humanos del Gobierno de Puerto Rico, la Rama Legislativa y la Rama Judicial, según aplique.
>
> Si las gestiones realizadas conforme al procedimiento y protocolo adoptado por el patrono resultan infructuosas, el empleado afectado acudirá al Negociado de Métodos Alternos para la Solución de Conflictos de la Rama Judicial. Si habiéndose orientado, las partes no aceptan la mediación o el mediador no recomienda la misma, entonces se podrá acudir ante la sala del tribunal competente presentando evidencia acreditativa de que se agotó dicho mecanismo alterno y radicar la acción civil que provee esta Ley.

Merece señalar que, el 29 de abril de 2022, el Departamento de Educación de Puerto Rico emitió la Carta Circular 39-2021-2022, *Política pública y procedimiento interno para la prevención y el manejo del acoso laboral en el Departamento de Educación de Puerto Rico*, relacionada con la implementación del estatuto protector. El documento provee un procedimiento interno para presentar, investigar y adjudicar las querellas relacionadas con el acoso laboral que contempla la Ley Núm. 90-2020.

### III.

En la presente causa, la señora Santiago Torruella sostiene que el TPI incidió al denegar su petición protectora al amparo de la *Ley Contra el Acecho en Puerto Rico, supra,* bajo los fundamentos de que no se establecieron los elementos estatutarios de acecho, así como que existía una *Querella* ante el Departamento de Educación, relacionada con los mismos incidentes de la *Petición.* Sostiene que ambos procesos versan sobre propósitos y remedios distintos. Impugna las expresiones judiciales en torno a que la Ley Núm. 284-1999, *supra,* no tiene como propósito evitar situaciones de estrés o mera rivalidad entre las personas.

Evaluamos el presente recurso a la luz de la Regla 40, *Criterios para la expedición del auto de certiorari,* del Reglamento del Tribunal de Apelaciones, In re Aprob. Enmdas. Reglamento TA, 2025 TSPR 42, según

enmendado, págs. 62-63, 215 DPR __ (2025). Al tenor de éstos y evaluada la evidencia documental y testifical ante nos, decidimos no intervenir en la causa del epígrafe.

Procede que nos abstengamos de expedir el auto discrecional solicitado, toda vez que el TPI actuó de manera ponderada al considerar el ordenamiento legal aplicable y los principios generales del derecho cuando convergen procedimientos administrativos y judiciales, delegando en el procedimiento arbitral laboral la adjudicación de credibilidad. Al evaluar la totalidad de las circunstancias, el TPI concluyó con acierto que no estaban presentes los elementos de acecho. Decididamente la parte peticionaria no logró demostrar que el foro recurrido haya actuado con prejuicio o parcialidad, ni incurrido en abuso de discreción, ni que se haya equivocado en la interpretación o aplicación del derecho.

### IV.

Por las razones expuestas, acordamos denegar el recurso discrecional de *certiorari.*

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones